UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
KAREN P. WONTROBSKI,

     Plaintiff,

  -against-

SOUTH HUNTINGTON UNION FREE
SCHOOL DISTRICT,

     Defendant.
----------------------------------------------X

MEMORANDUM
& ORDER

02 CV 3755 (SLT)

TOWNES, U.S.D.J.

Defendant moves for summary judgment on Plaintiff's Title VII discrimination claim. Based on the written submissions of the parties and for the reasons set forth below, the Defendant's motion is GRANTED.

*BACKGROUND*

Karen Wontrobski ("Plaintiff") was employed by the South Huntington Union Free School District ("Defendant" or "District") as a probationary social studies teacher from September 1997 until July 2001. (Def. Rule 56.1 ¶ 4.) Under New York Education Law, a teacher must serve a three year probationary term, at the end of which the teacher either receives tenure (upon the recommendation of the Superintendent and the approval of the School Board) and is kept on staff as a permanent faculty member or does not receive tenure and is terminated. (Def. Rule 56.1 ¶ 5.)

In a classroom observation report dated January 11, 2000, Superintendent Marilyn Zaretsky ("Zaretsky") rated Plaintiff's lesson as unsatisfactory, though Plaintiff states that Zaretsky originally rated the lesson as satisfactory and only changed it to unsatisfactory three months later when Plaintiff was up for tenure. (Def. Rule 56.1 ¶ 7; Pl. Rule 56.1 ¶ 2; Pl. Dep. 34-36; Def. Ex. C; Pl. Affidavit dated 12/6/04[1] ("Pl. Aff") ¶ 7.) Plaintiff further states that Zaretsky told her following a subsequent classroom evaluation on February 16, 2000, that she would be receiving tenure. (Pl. Rule 56.1 ¶ 1; Pl. Aff. ¶ 7.)

At the end of Plaintiff's initial probationary term in May 2000, Plaintiff was informed by Zaretsky that she would not be recommended for tenure. (Def. Rule 56.1 ¶ 6.) Faced with the prospect of termination, Plaintiff requested that she be allowed to remain for an additional probationary year, at the end of which Defendant would reconsider her for tenure. (Def. Rule 56.1 ¶¶ 9, 10; Def. Exs. F, G, M.) Plaintiff states that Zaretsky assured her that if she agreed to a fourth probationary year she would automatically be granted tenure at that time. (Pl. Aff. ¶ 9.) Two professional employment plans were developed in June and September 2000 to address what Defendant perceived to be Plaintiff's deficiencies in her teaching, though Plaintiff denies having been involved in the development of these plans or agreeing with Defendant's perception of her performance failings. (Def. Rule 56.1 ¶ 12; Pl. Rule 56.1 ¶ 4; Pl. Aff ¶ 12; Def. Ex. H.)

Plaintiff notified Defendant that she was pregnant in mid-November 2000. (Def. Rule 56.1 ¶ 13.) Plaintiff received negative reviews of her class lessons after observations on January

---

[1] Plaintiff *pro se*'s affidavit, though unsworn, may be treated by this Court as equivalent to a sworn affidavit for purposes of this summary judgment motion because it is signed, dated, and includes a verification by Plaintiff that its contents are true "under penalty of perjury." *See Yearwood v. Piccolo*, 1998 U.S. Dist. LEXIS 12302, at *14-15 (S.D.N.Y. Aug. 10, 1998) (citing 28 U.S.C. §1746).

9, 2001; January 31, 2001; and February 1, 2001[2] , with at least one unsatisfactory rating coming from the new Superintendent, Timothy Brennan. (Def. Rule 56.1 ¶ 14-15; Pl. Rule 56.1 ¶ 7; Def. Ex. C.) Plaintiff also received satisfactory ratings after classroom observations on November 29, 2000; November 30, 2000; and December 10, 2000. (Pl. Ex. B.)

Superintendent Timothy Brennan informed Plaintiff in April 2001 that he was recommending her termination to the School Board. (Def. Ex. J.) Plaintiff was subsequently terminated from her employment with Defendant. (Pl. Dep. 74, 77.)

Plaintiff filed this employment discrimination action on June 27, 2002, alleging that Defendant terminated her because she was pregnant, in violation of Title VII. (Def. Ex. A (Complaint).) Defendant filed the instant motion for summary judgment on January 26, 2005.

*DISCUSSION*

I.  Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact" such that the moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To be "genuine," an issue of fact must be supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party," *Holtz*, 258 F.3d at 69, and "a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Alston v. New York City Transit Auth.*, 2003 U.S. Dist.

---

[2] Defendant also lists an unsatisfactory observation on January 26, 2001, but there is no documentation of an observation occurring on this date in the record. (Def. Rule 56.1 ¶ 14.)

LEXIS 21741, at *4 (S.D.N.Y. Dec. 3, 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Where the non-moving party is proceeding pro se, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest arguments that they suggest.'" *Forsyth v. Fed'n Empl. & Guidance Serv.*, 409 F.3d 565, at *10-11 (2d Cir. 2005) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

The Second Circuit has noted that it "is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and that "the salutary purposes of summary judgment – avoiding protracted, expensive, and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (internal quotation marks omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[W]e have reiterated that trial courts should not 'treat discrimination differently from other ultimate questions of fact.'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (noting that the Second Circuit has expressly sought to "remind [the] district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'") (quoting *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir. 1994)); *Arrocha v. City Univ. Of New York*, 2004 U.S. Dist. LEXIS 4486, at *8 (E.D.N.Y. Feb. 9, 2004) (Feuerstein, J.) ("[S]ummary judgment may be appropriate if a discrimination case is devoid of genuine issues of material fact.").

II.   Pregnancy Discrimination

Title VII prohibits discrimination against any individual on the basis of gender, 42 U.S.C. § 2000e-2(a)(1), and further provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." *Id.* § 2000e(k) (termed the Pregnancy Discrimination Act). Where, as here, there is no direct evidence of pregnancy discrimination, Plaintiff's claim must be examined under the three-step burden shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (applying "the three-step burden shifting analysis of *McDonnell Douglas*" to pregnancy discrimination claim).

Under the *McDonnell Douglas* test, a plaintiff must first state a prima facie case of pregnancy discrimination. In order to do so, a plaintiff must show that "(1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995) (citing *McDonnell Douglas*, 411 U.S. at 802). A plaintiff may alternatively establish the fourth element of a prima facie case by demonstrating that the "discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Kerzer*, 156 F.3d at 401 (citing *Quaratino*, 71 F.3d at 64). A plaintiff's burden in establishing a prima facie case of discrimination is *de minimis*. *Id.*

If a plaintiff successfully establishes a prima facie case of pregnancy discrimination, the burden shifts to the defendant, who must then offer a legitimate, non-discriminatory reason justifying the allegedly improper employment action. *McDonnell Douglas*, 411 U.S. at 802;

*Quaratino*, 71 F.3d at 64. If the defendant meets this burden, the presumption of discrimination created by the prima facie case drops out of the picture, and the defendant will be entitled to judgment as a matter of law unless the plaintiff can point to evidence that reasonably supports a finding of impermissible pregnancy discrimination. *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

### A. Prima Facie Case

Plaintiff meets the first three elements of her prima facie case. As to the first element, Defendant argues that Plaintiff cannot claim membership in a protected class because she did not disclose that she was pregnant, or even become pregnant, until after she was informed that she would not be recommended for tenure in May 2000. However, the adverse employment action complained of by Plaintiff is her denial of tenure and subsequent termination in July 2001, at which point she was pregnant and, therefore, qualified for the protections of Title VII.

Defendant also contends that Plaintiff cannot fulfill the second element of the prima facie case because she did not satisfactorily perform the duties of her position, as evidenced by Superindentant Zaretsky's May 2000 recommendation that she not be granted tenure and the creation of a performance improvement plan for addressing Plaintiff's unsatisfactory performance as a teacher. However, "*McDonnell Douglas* requires only a minimal showing of qualification for the employment in question to establish a prima facie claim. Plaintiff need not demonstrate that her performance was flawless or superior...plaintiff must only show that she possesses the basic skills necessary for performance of the job." *Branson v. Allen*, 2004 U.S. Dist. LEXIS 22135, at *14-15 (E.D.N.Y. Nov. 3, 2004) (Gleeson, J.) (citations and internal quotation marks omitted); *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) ("[W]e have long

emphasized that the qualification prong must not be interpreted in such a way as to shift into the plaintiff's prima facie case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision."). Further, the fact that an employer hired an individual and retained her in its employ for a significant period of time supports an inference that she possessed at least minimal qualifications for the job. *Gregory*, 243 F.3d at 696. Where, as here, Plaintiff was employed by Defendant for four years and disputes the allegations that her work was unsatisfactory[3], Plaintiff meets her burden of proving this element of her prima facie case.

There is no dispute that Plaintiff was denied tenure and discharged from her position as a teacher in the District. Oddly, Defendant attempted to argue in its initial brief that the only adverse action complained of by Plaintiff was the receipt of negative employment evaluations, though it dropped this argument in its reply brief. Plaintiff clearly stated in her complaint and in all subsequent pleadings that the discriminatory action she suffered was the termination of her employment, which satisfies the third element of her prima facie case. 42 U.S.C. § 2000e-2(a)(1).

Plaintiff's claim fails at the fourth and final element of the prima facie case, as she has not come forth with any evidence that could give rise to an inference that she was terminated as a result of her pregnancy. She does not argue that she was replaced in her position by another individual who was not pregnant, nor does she present any evidence of discriminatory remarks by Defendant or preferential treatment given to similarly situated employees who were not in her protected class. *Gibbs v. City of New York*, 2005 U.S. Dist. LEXIS 3169, at *27 (Jan. 21, 2005)

---

[3] In *Mclee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), the court held that the plaintiff had failed to show that he had even the minimal qualifications necessary to sustain his prima facie case where he did not challenge many of the allegations of incompetency charged by his employer.

(Bloom, J.) (discussing ways in which a plaintiff may raise an inference of discrimination for purposes of a prima facie case). In fact, Plaintiff testified in her deposition that, of the ten teachers she knew who had been on probation during her four years in the district, "all received tenure and certainly no pregnant women were denied tenure. I was the only pregnant woman denied tenure." (Tr. 41.) While Plaintiff did testify that Superintendent Zaretsky assured her in May 2000 that she would receive tenure if she stayed on for a fourth year as a probationary teacher (Tr. 44.), Plaintiff also testified that Zaretsky had told her that she would receive tenure in February 2000, three months before it was denied the first time and nearly a year before she became pregnant. (Tr. 35, 37.) Similarly, Plaintiff testified that she began receiving negative evaluations in early 2001 after she announced her pregnancy (Tr. 83), but she also testified that she received a negative evaluation from Zaretsky near the time she was denied tenure the first time, prior to her pregnancy. (Tr. 34-36, 41.) Furthermore, Plaintiff herself submitted copies of three positive evaluations that she received <u>after</u> she informed the District of her pregnancy. (Pl. Ex. B.) In short, Plaintiff has submitted nothing linking her second denial of tenure and subsequent termination to her pregnancy, as is required to make out a prima facie case of discrimination. Thus, Plaintiff's claim must fail.

B.     Legitimate, Non-Discriminatory Reason for Termination and Pretext

Even if this Court were to find that Plaintiff had established a weak prima facie case of pregnancy discrimination, her claim cannot withstand summary judgment because Defendant has articulated a legitimate, non-discriminatory reason for her denial of tenure and subsequent termination – *i.e.*, her unsatisfactory evaluations during her probationary period – and Plaintiff has failed to proffer admissible evidence that would permit a reasonable finder of fact to

conclude that Defendant's stated reason is a pretext for unlawful pregnancy discrimination. *See James*, 233 F.3d at 154.

Plaintiff sole argument for pretext is that she was undeserving of her unsatisfactory evaluations, two of which she received from the governing Superintendents, and that she performed exemplary work as a teacher during her four year probationary period. However, Plaintiff's "subjective disagreement with [her] reviews is not a viable basis for a discrimination claim." *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."); *Jimoh v. Ernst & Young*, 908 F. Supp. 220, 226 (S.D.N.Y. 1995) (holding that a "plaintiff must do more than simply disagree with [his employer's] business decisions" in order succeed on a discrimination claim).

Here, Plaintiff had both good and bad reviews in her record both before and after she became pregnant. The Court cannot now second-guess Defendant's decision that, on balance, Plaintiff's negative evaluations by two Superintendents necessitated a denial of tenure, as the focus of a pretext analysis is not whether a defendant's stated reason for the adverse action was unwise or unreasonable, but only whether it was the actual reason for the challenged action. *Demarco v. Holy Cross High School*, 4 F.3d 166, 170-71 (2d Cir. 1993); *Dister*, 859 F.2d at 1116 (holding that "the reasons tendered [by the employer] need not be well-advised, but merely truthful"); *Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308, 313-14 (S.D.N.Y. 1998). Plaintiff has done little more than point to what she believes was a wrongful and unfair employment decision and ask the Court to allow a jury to conclude that it must have been related to her pregnancy because of an accident of timing. However, "a jury cannot infer discrimination

from thin air." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (citing *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998)). Thus, Plaintiff's discrimination claim must be dismissed.

## *CONCLUSION*

As Plaintiff has, at best, made out a weak prima facie case and has introduced no evidence that Defendant's stated reason for terminating her served as a pretext for impermissible pregnancy discrimination, the Court grants Defendant's motion for summary judgment.

**SO ORDERED.**

/s/
_____
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated: Brooklyn, New York
July 26, 2005